EDGAR D. GRANT and HARVEY D. GRANT,
Plaintiffs,

*vs.*

THOMAS P. PLUMMER and MILDRED M. PLUMMER,
Defendants.

*New Castle, March 25, 1959.*

*David B. Coxe, Jr.,* Wilmington, for plaintiffs.

*David N. Snellenburg, II,* of Killoran & VanBrunt,, Wilmington, for defendants.

SEITZ, Chancellor: On June 11, 1948, plaintiffs and defendants entered into a lease covering a portion of certain premises owned by defendants and used as a drug store. It was to continue as a drug store under the lease. The negotiations were actually between plaintiff, Harvey D. Grant (hereafter "plaintiff"), and defendant, Thomas P. Plummer (hereafter "defendant"). The lease provided for a $200 monthly rental for the initial ten-year period.

Paragraph three of the lease provided for a renewal for an additional ten-year period,

> "at a rental equal to three and one-half per centum (3½%) of the determined gross income from the said pharmacy business for the last year of this lease, said gross income to be determined by two accounts, [sic, accountants], one chosen by the Lessors and one by the Lessees, provided, however, that the monthly minimum rental shall never be less than two hundred dollars ($200.00), * * *".

Plaintiff gave proper notice of a desire to renew for the additional term and for the first time a disagreement arose as to the meaning of the words "gross income" in paragraph three. Plaintiff contended that it meant income after deducting the costs of goods sold while defendants contended that it meant gross sales. I think it fair to say from the testimony that the accountants designated by the parties did not attempt to make an independent determination of "gross income". They merely calculated the amounts in accordance with the respective contentions of the parties as to the meaning of the words. It is agreed that under defendant's interpretation of the lease, the rental for the renewal period is in excess of $200 per month.

The plaintiffs brought this action for a declaratory judgment and an injunction to prevent defendants from ejecting plaintiffs from the premises for failure to pay the monthly rental which defendant claimed was due for the renewal period. This is the decision after

final hearing. It is agreed that the matter is properly before the court for decision no matter what the accountants should have done.

The first problem confronting the court is to ascertain the meaning of the words "gross income" as they appear in this lease. Plaintiff cited authorities which construed those words to mean the income after deducting business expenses, while defendant cited authorities which stated that such words meant income before such deductions.

I conclude that the proper approach is that found in the following language from *First Trust Co. of St. Paul v. Commonwealth Co.,* 8 *Cir., 98 F.2d 27,* 31 :

"We conclude that the term 'gross income' cannot be said to convey the same definite and inflexible significance under all circumstances and wherever used. Its meaning depends on the connection in which it is used and the result intended to be accomplished. Here we must ascribe that meaning which conforms the contract to the intent of the parties."

I turn then to the circumstances existing when this lease was executed in 1938.

The testimony, while fragmentary, tends to show that the so-called percentage-of-gross-sales lease provision was not then too common in the local drug business. But of more particular importance, while the defendants and perhaps the plaintiffs had some knowledge of such provisions, they did not have any detailed knowledge thereof and were in fact utterly ignorant of what I shall call the "scientific" method of determining the "normal" percentage range. While both men had some business experience I would not consider them to be experienced businessmen in the full sense of that expression.

In seeking to arrive at the intention of the parties, let us first consider the language of the lease to the effect that said gross income is to be determined by the two accountants. Under all the evidence it appears that the accountants generally do not understand "gross income" in the accounting field to be the equivalent of "gross sales". Conceding that gross income was not necessarily used in the lease in the way in which accountants would treat it, even though its determination was to be referred to them, this provision and the testimony

would tend to suggest an interpretation of gross income which would not be the equivalent of gross sales. It is also generally true in the tax field that "gross income" is different from "gross sales".

Let us next consider other circumstances.

The evidence shows that the term gross sales was brought into the original negotiations by the defendant who had been operating the business and who was aware of its past, albeit rather short, financial history. In contrast, plaintiff, who acted as defendant's pharmacist for a time prior to the execution of the lease, did not have information available to him as to gross sales even at the time he agreed to the percentage provision and executed the lease. He had only some scanty information based upon the fact that on occasion he handled the cash register. Nor did he operate the entire business while he worked for defendant. Thus, it cannot be said that plaintiff had such a knowledge of the gross sales that he could have made any intelligent projection of sales growth except in the vaguest possible way. So far as I could observe, although plaintiff had years of experience in the pharmacy business, his business acumen left much to be desired.

The importance of plaintiff's conceded lack of information concerning current gross sales is found in the fact that, lacking such information, he would be more likely to execute a long range lease which contained a provision relating rental to profit after deducting business expenses. In this way he would have more protection. This is particularly true since, as was brought out by a witness, this type of provision, when based on gross sales, frequently varies its percentage, depending upon the types of articles sold. For example, you can have a large sales volume of cigarettes with a very narrow profit margin.

The court realizes that percentage of gross sales provisions have become common. That fact does not alter my view as to the proper interpretation of this lease provision.

The defendant testified on the basis of his best recollection that he discussed and agreed with plaintiff that the percentage would be 3½% of "gross income". However, he insisted that it was clear

that he meant gross sales. It is also of interest that there was evidence to indicate that defendants subsequently had a different attorney prepare a lease with another tenant for other premises in which the term "gross sales" was employed. Such lease was executed prior to any question arising as to the meaning of the words "gross income" in the present lease.

Plaintiff, Harvey Grant, was equally insistent that he understood the language gross income to mean the amount of income after deducting expenses. There is no reason under the circumstances of this case to reject such testimony.

The evidence also shows that the lease was prepared by defendant's then attorney. I cannot conclude on the record that it was "cleared" by the attorney who was employed by plaintiff on related matters.

While defendants testified that at the time the lease was executed, their attorney explained to plaintiffs and defendants that the term gross income meant gross sales, the plaintiffs categorically denied that such explanation was given. The defendants' then attorney testified that he could not remember that he explained this particular provision. However, he testified that he "must" have done so because he explained the whole instrument. The court is compelled to conclude that defendants' evidence as to this event is not sufficiently strong to be adopted on this record, assuming it is admissible in interpreting the instrument.

■ I therefore conclude that the words "gross income" must under the circumstances be interpreted to mean income after and not before deducting the costs of goods sold.

This brings the court to the defendants' contention that if the lease be interpreted as the court has interpreted it, then those words were employed under a mutual mistake of fact or law and the lease should therefore be cancelled.

■ Passing over any question as to what would be the proper relief in the event it were to be determined that there was a mutual mistake of fact or law, I must conclude from the evidence that defendants did not sustain their burden of showing a mutual mistake of

fact or law. The testimony already reviewed in connection with the issue of interpretation is also relevant here. I will not repeat it.

The most favorable reading I can give the evidence from the defendants' point of view persuades me that they, perhaps through an unfortunate choice of language, were the victims of a mistake, whether of a fact or law I need not decide. But I am equally satisfied that defendants did not prove that plaintiffs were also laboring under a mistaken view as to the meaning of the provision in question.

The facts here made pertinent the following statement, 2 *Restatement of Contracts*, § 501, Comment b:

> "If the misunderstanding is due to the fault of one party and the other party understands the transaction according to the natural meaning of the words or other acts, both parties are bound by that meaning."

■ Defendants' counsel suggested at oral argument that the court would grant cancellation where there is a showing of a unilateral mistake. The law in this area has been in a state of flux. Mr. Williston criticizes the doctrine which permits rescission of a contract on account of unilateral mistake. 5 *Williston* (*Rev.Ed.*), § 1579. I do not believe that the court is justified here in recognizing the unilateral mistake as sufficient ground for relief.

It has been held for many years in this state that in order to reform an instrument the party seeking such reformation must show a mutual mistake of fact or law. See *Hob Tea Room v. Miller*, 33 *Del.Ch.* 38, 89 *A.2d* 851. Cancellation, under the present facts, would seem to call for the same requirement. See *Restatement of Contracts*, §§ 503, 504.

I therefore conclude that the defendants did not prove mistake of a kind which entitles them to relief on their counterclaim seeking to cancel the lease.

Present order on notice.